UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-21726-JEM/Becerra

STRATEGIC ADVISERS GROUP LLC,

    Plaintiff

v.

GRUPO INDUSERVICE S.A.S.,

    Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** came before the Court on Plaintiff Strategic Advisers Group LLC's ("Plaintiff") Motion for Default Final Judgment Against Defendant Grupo Induservice S.A.S. ("Defendant"). ECF No. [13]. Defendant did not file a response to the Motion and the time to do so has passed. On November 16, 2021, the Court held a hearing on this matter. ECF No. [19]. Only Plaintiff appeared for the hearing. *Id.* Upon due consideration of Plaintiff's Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that the Motion be **GRANTED IN PART AND DENIED IN PART**.[2]

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [16].

[2] Defendant filed a *pro se* Motion to Dismiss Without Cause, ECF No. [14]. Defendant's *pro se* Motion to Dismiss comes after the District Court's admonished that, as a corporation, it was not permitted to proceed *pro se*. *See* ECF No. [11] at 1 n.1. Because corporations cannot appear *pro se* or through their corporate officers, it is hereby **RECOMMENDED** that Defendant's *pro se* Motion to Dismiss, ECF No. [14], be **STRICKEN**. *See Blanco GmbH + Co. KG v. Vlanco Indus., LLC*, No. 12-61580-CIV, 2012 WL 12838280, at *2 (S.D. Fla. Nov. 19, 2012) (concluding that a corporate defendant's *pro se* motion to dismiss had to be stricken).

I. **BACKGROUND**

On May 5, 2021, Plaintiff filed this breach of contract action against Defendant. ECF No. [1]. On June 11, 2021, a Clerk's Default was entered based on Defendant's failure to respond to the Complaint. ECF No. [10]. Subsequently, the District Court entered its Order on Default Final Judgment Procedure. ECF No. [11]. Therein, the District Court ordered Plaintiff to file a motion for default final judgment no later than July 15, 2021. *Id.* at 1. The District Court noted that if Defendant failed to respond to the Complaint or move to set aside the Clerk's Default by July 15, 2021, then a default final judgment could be entered. *Id.*

On July 9, 2021, Plaintiff filed the instant Motion for Default Final Judgment. ECF No. [13]. Plaintiff argues that Defendant breached an "international consulting and fee protection agreement" between the Parties. *Id.* ¶ 2. Specifically, the agreement requires that Defendant pay Plaintiff five percent of all investment profits achieved as a result of services rendered by Plaintiff. *Id.* ¶ 9. Plaintiff alleges that on or about April 2021, Defendant "began conducting secretive, undisclosed, negotiations" that "came to fruition as a direct result of efforts led by [Plaintiff]" and culminated with the execution of an investment agreement to Defendant's benefit. *Id.* ¶¶ 18–20. Thus, Plaintiff claims that it is entitled to 1.5 billion dollars, "based on Defendant[]'s minimum investment target of at least $7,000,000,000 (Seven Billion USD) and its related returns and profit projections." *Id.* at 11.

In support of its Motion, Plaintiff submitted the affidavits of Juan Fernandez Muñoz Mora, Beatriz Yovanna Valdivieso Orozco, and Franco Romero Rentería. *Id.* at 14, 20, 26. Mr. Muñoz, Ms. Valdivieso, and Mr. Rentería state that they were present and listened to various telephone conversation during which Defendant's representatives discussed the execution of the private trade investment contract at issue. *Id.* at 14–15, 20–22, 26–27.

In addition, Plaintiff submitted the affidavit of Sebastian Saviano, Plaintiff's managing member. *Id.* at 33. Mr. Saviano's affidavit explains how Plaintiff calculated the damages sought. *Id.* at 33–34. Specifically, Mr. Saviano states that Plaintiff introduced Defendant to an investment program and pursuant to the Agreement between the Parties, Plaintiff was entitled to a five percent commission for the services provided. *Id.* at 35–36. In this instance, Defendant's "initial investment involved a financial sum of up to GBP 5,000,000,000 (Five Billion British Pound Sterling), or approximately $7,000,000,000 (Seven Billion USD)." *Id.* at 34. Because Plaintiff's commission is based on profits, Mr. Saviano calculates Defendant's expected profits as follows:

> The investment program which [Plaintiff] introduced to [Defendant] had a high-yield trading round of seventy-five (75) days, with a projected profit of twenty (20) percent daily, yielding a total profit of fifteen hundred (1,500%) percent over the seventy-five (75) days. A fifteen hundred (1,500%) percent profit on the initially allocated investment funds of 5 Billion USD yields a projected total gross return of seventy-five billion ($75,000,000,000) USD.
>
> The private investment asset manager, or program manager, keeps twenty (20%) percent of the gross profits.
>
> In this case, fifteen billion ($15,000,000,000) USD would be deducted from the total profit of seventy-five billion dollars (USD). [Defendant] would retain a net profit of sixty billion ($60,000,000,000) USD.
>
> The one and half billion (1,500,000,000) USD claim advanced by [Plaintiff] is based on two and half (2.5%) percent of the projected conservative net profits of sixty billion ($60,000,000,000) USD as computed above.
>
> [Plaintiff]'s consulting fee agreement with [Defendant] involved a total fee of five (5%) percent. Of this five (5%) percent fee, only two and half (2.5%) percent goes to [Plaintiff], the remaining two and half (2.5%) percent belong to third parties in Colombia.

*Id.* at 35–36 (internal numeration omitted).

At hearing on this matter, Plaintiff's counsel stated that it was prepared to introduce Mr. Saviano's testimony to affirm the claims he made in his affidavit. Plaintiff's counsel stated that Mr. Saviano does not have access to the subject trading sheets and that his calculation of damages

is solely based on the amount he believes he is owed. Plaintiff's counsel noted that because Plaintiff does not have access to any of the pertinent trading documents, it would need to conduct discovery in England and Colombia in order to ascertain the exact amount Defendant invested. As such, based on Plaintiff's uncertainty as to the amounts actually invested by Defendant, Plaintiff ultimately sought leave to conduct discovery in support of the damages requested.

Finally, although Defendant did not file a response to the instant Motion, on July 14, 2021, Defendant filed a *pro se* Motion to Dismiss Complaint. ECF No. [14].

## II.   ANALYSIS

As a preliminary matter, Defendant, a corporation, filed a *pro se* Motion to Dismiss on July 14, 2021. ECF No. [14]. As previously set forth, it is well-established that that "a corporation is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel." *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) (citations omitted). Indeed, the District Court's Order on Default Final Judgment Procedure noted that "any pleadings or documents filed by the corporate Defendant must be filed through counsel." ECF No. [11] at 1 n.1. Because Defendant did not file a proper response to the Complaint or a motion to set aside the Clerk's Default, "default final judgment may be entered." *Id.* at 1. As such, the Court turns to Plaintiff's Motion for Default Final Judgment, ECF No. [13].

### a.   Legal Standards

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment. First, subsection (a) provides that the Clerk of Court must enter default when the defendant fails "to plead or otherwise defend." Fed. R. Civ. P. 55(a). Next, upon the entry of a clerk's default, the Court must enter a judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due . . . ." *Id.* at 55(b)(1).

4

A default admits plaintiff's well-plead allegations of fact. *Lary v. Trinity Physician Fin. & Ins. Services*, 780 F.3d 1101, 1106 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)). Thus, in determining whether default judgment may be entered, courts must review the allegations in the complaint to determine whether there is a "sufficient basis in the pleadings for the particular relief sought." *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1289 (S.D. Fla. 2020) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (noting that the "sufficient basis" standard is akin to the motion to dismiss standard). Once liability has been established, the court must assess the damages sought by examining the affidavits submitted. *See, e.g.*, *Svetlick v. Lucius*, No. 08-61525-CIV-ZLOCH, 2009 WL 1203925, at *1 (S.D. Fla. May 1, 2009) (awarding default final judgement as to "the precise amount of damages, including actual damages as well as liquidated damages" pursuant to the agreement between the parties). A hearing is not required if the damages sought can be calculated based on definite figures. *See J & J Sports Productions, Inc. v. Arboleda*, No. 6:09CV467ORL18DAB, 2009 WL 3490859, at *2 (M.D. Fla. Oct. 27, 2009).

    **b. Liability**

The Complaint only asserts one count for breach of contract. ECF No. [1]. To state a claim for breach of contract, a plaintiff must establish "(1) a valid contract; (2) a material breach; and (3) damages." *Everglades Ecolodge at Big Cypress, LLC v. Seminole Tribe of Florida*, 836 F. Supp. 2d 1296, 1302 (S.D. Fla. 2011) (quoting *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999)). A material breach is nonperformance of contractual obligations that go to the essence of a contract such that the non-breaching party is discharged from its own obligations. *See MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1298 (S.D. Fla. 2011), *aff'd in part, question certified*, 720 F.3d 833 (11th Cir. 2013), *certified question answered*, 143 So. 3d

881 (Fla. 2014), *and aff'd*, 579 Fed. Appx. 700 (11th Cir. 2014). The injured party is entitled to recover damages that naturally flow from the breach and were reasonably contemplated by the parties at the time of contracting. *See ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1268 n.4 (S.D. Fla. 2020) (quoting *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002)).

Plaintiff has satisfied the elements for breach of contract. First, Plaintiff alleges that the parties executed a commission fee agreement, which requires Defendant to pay Plaintiff a five percent commission on the profits derived "from any investment achieved as a result of the services rendered by Plaintiff." ECF No. [1] ¶ 7. Plaintiff alleges that in accordance with the agreement between the Parties, it introduced Defendant to an investment opportunity that ultimately "culminated in an investment agreement for the benefit of Defendant." *Id.* ¶ 14. However, Plaintiff alleges that Defendant concealed the fact that it followed through with the investment in order to deprive Plaintiff of its commission. *Id.* ¶¶ 13–16. As a result, Plaintiff claims that is has been damaged in the amount of its "loss of commission[]." *Id* at 4–5. Based on the undersigned's review of the Complaint and the record in this case, the Court finds that Plaintiff has sufficiently states a claim for breach of contract against Defendant.

### c. Damages

Plaintiff seeks $1,500,000,000 in damages. ECF Nos. [1] at 4; [13] at 35. In support of its claim, Plaintiff states that it introduced Defendant to a high-yield trade program and that it is now entitled to a commission of Defendant's projected profit of 1,500%. ECF No. [13] at 35. Because Plaintiff believes that Defendant invested $7,000,000,000, it submits that Defendant's projected net profit would be $60,000,000,000. *Id.* As such, Plaintiff claims that it is entitled to a commission of $1,500,000,000 pursuant to the Parties' agreement. *Id.* at 35–36. At the hearing on the instant Motion, Plaintiff's counsel stated that it was prepared to introduce the testimony of

Mr. Saviano to affirm the claims made in his affidavit. However, Plaintiff's counsel stated that this was the only evidence Plaintiff had in support of the damages requested. Therefore, because Plaintiff did not have any exhibits to support the damages requested, Plaintiff's counsel ultimately sought leave to conduct discovery only as to damages.

A plaintiff's allegations regarding damages are not deemed admitted by virtue of a default. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). Instead, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Id.* To that extent, a default judgment awarding monetary damages can only be entered "if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). Where damages are not liquidated and cannot be ascertained objectively through an arithmetic calculation, a hearing is necessary. *See Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 Fed. Appx. 737, 746 (11th Cir. 2017). Specifically, in *Safari*, the Eleventh Circuit determined that an evidentiary hearing on damages was necessary because an affidavit from the plaintiff's CEO "relying on a dubious extrapolation from limited sales data—was not sufficient to make a 'fully informed determination of damages.'" *Id.* at 747 (quoting *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)).

In some instances, where discovery is necessary to establish damages, default final judgment may be entered only as to liability. For example, in *Cancienne v. Drain Master of South Florida, Inc.*, the Court concluded that although the default admitted the plaintiff's well-pled allegations thereby establishing liability, the motion for default final judgment and its supporting statement of claim and affidavit were insufficient to establish damages. No. 08-61123-CIV, 2008 WL 5111264, at *1 (S.D. Fla. Dec. 3, 2008). Specifically, the Court found that the plaintiff's

7

unsubstantiated approximations regarding damages were insufficient. *Id.* As a result, the Court entered default final judgment only as to liability, noting: "[t]he Court will take up the issue of [p]laintiff's damages at a later stage in the litigation, after discovery is completed. Then, [p]laintiff will be able to establish his damages through the appropriate exhibits and testimony. This action will otherwise proceed through the normal course of a law suit." *Id.*

Here, the Court finds that Plaintiff's 1.5 billion-dollar damages request, at this juncture, is supported only by speculation. Specifically, Plaintiff states that it *believes* Defendant invested $7,000,000,000, that Defendant's investment opportunity is expected to yield a 1,500% profit, and as such, that it should be entitled to a commission of $1,500,000,000 based on the Parties' agreement. However, Plaintiff provides no support for this exorbitant contention beyond its own estimation. At the hearing the undersigned set on the matter, Plaintiff's counsel indicated that it was prepared to submit the testimony of Mr. Saviano to substantiate the claims made in his affidavit but that it could not submit any additional evidence because discovery would be necessary to obtain documents in support of the damages requested. Plaintiff conceded that it did not yet have any evidentiary support for Defendant's initial investment because it did not have access to the trading documents. As such, its damages calculation was based solely on what Plaintiff believed Defendant initially invested.

The undersigned finds that Plaintiff's estimation of Defendant's initial investment in the absence of any supporting evidence is insufficient to enable the Court to make an informed determination of damages. Therefore, the Court hereby **RECOMMENDS** that default final judgment be entered as to liability and that Plaintiff be granted leave to conduct discovery for the purpose of establishing damages. Upon the conclusion of discovery, the Court may adequately consider Plaintiff's damages with the appropriate evidence.

### III. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion for Final Default Judgement, ECF No. [13], be **GRANTED IN PART AND DENIED IN PART** and Defendant's Motion to Dismiss Without Cause, ECF No. [14], be **STRICKEN**. Default final judgment should be entered only as to liability and Plaintiff should be permitted to proceed with discovery as to damages.

### IV. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Any request for an extension of this deadline must be made within seven (7) calendar days from the date of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on November 18, 2021.

_____
JACQUELINE BECERRA
United States Magistrate Judge